# APPENDIX B

# PRODUCTS LIABILITY LAW

## Third Edition

by

**David G. Owen**

*Carolina Distinguished Professor of Law Emeritus*
*University of South Carolina*

**HORNBOOK SERIES®**

WEST ACADEMIC PUBLISHING

Mat #41076621

The publisher is not engaged in rendering legal or other professional advice, and this publication is not a substitute for the advice of an attorney. If you require legal or other expert advice, you should seek the services of a competent attorney or other professional.

*Hornbook Series* is a trademark registered in the U.S. Patent and Trademark Office.

© 2005 West, a Thomson business
© 2008 Thomson/West
© 2015 LEG, Inc. d/b/a West Academic
444 Cedar Street, Suite 700
St. Paul, MN 55101
1-877-888-1330

West, West Academic Publishing, and West Academic are trademarks of West Publishing Corporation, used under license.

Printed in the United States of America

**ISBN:** 978-0-314-26839-6

# Chapter 9

# WARNING DEFECTS

*Table of Sections*

§ 9.1 Warning Defects—Generally.
§ 9.2 Theories and Tests of Liability.
§ 9.3 Adequacy.
§ 9.4 Persons to Be Warned.
§ 9.5 Sophisticated Users and Bulk Suppliers.

## § 9.1 WARNING DEFECTS—GENERALLY

Manufacturers and other sellers have a duty to provide consumers with warnings of hidden product dangers and instructions on how products may be safely used.[1] Products that fail to carry sufficient informational "software" of this type are deemed "defective." If a user or consumer is injured as a result of a warning defect,[2] because such danger or safety information was not provided, the manufacturer is subject to liability for the harm.[3]

[1] Retail sellers as well as manufacturers and other product suppliers may have a duty to warn buyers of product hazards. See, e.g., Porrazzo v. Bumble Bee Foods, LLC, 822 F. Supp. 2d 406, 419 (S.D.N.Y. 2011) ("an injured plaintiff in a strict liability failure to warn case may recover from both manufacturers and retail sellers of the product"); Ford Motor Co. v. Rushford, 868 N.E.2d 806, 810–12 (Ind. 2007) (retail seller has duty to warn, satisfied by passing along to consumer adequate warnings provided by manufacturer). Yet, because warning defects normally originate with the manufacturer, this chapter addresses the law on warning defects principally in relation to manufacturers. For special rules applicable to retailers, see § 15.2, below.

[2] The term "warning defects" is often used as an umbrella term to include instruction defects, too, as discussed below. In Texas, warning defects are referred to as "marketing defects." See, e.g., Ranger Conveying & Supply Co. v. Davis, 245 S.W.3d 471, 480 (Tex. App. 2007). In West Virginia, sometimes they are referred to as "use defects." See, e.g., Eskridge v. Pacific Cycle, Inc., 556 F. App'x 182, 186–87 (4th Cir. 2014) (W.Va. law).

[3] On warnings generally, see Todd, A Rhetoric of Warning Defects, 54 S. Tex. L. Rev. 343 (2012); Twerski and Cohen, Resolving the Dilemma of Nonjusticiable Causation in Failure-To-Warn Litigation, 84 S. Cal. L. Rev. 125 (2010); Schwartz and Appel, Effective Communication of Warnings in the Workplace: Avoiding Injuries in Working with Industrial Materials, 73 Mo. L. Rev. 1 (2008); Howells, Information Obligations and Product Liability—A Game of Russian Roulette?, in Information Rights and Obligations—A Challenge for Party Autonomy and Transactional Fairness (G. Howells, A. Janssen, and R. Schulze eds., Ashgate 2004–2005); Korzec, Restating the Obvious in Maryland Products Liability Law: The Restatement (Third) of Torts: Products Liability and Failure to Warn Defenses, 30 U. Balt. L. Rev. 341 (2001); Bowbeer, Lumish, and Cohen, Warning! Failure to Read This Article May Be Hazardous to Your Failure to Warn Defense, 27 Wm. Mitchell L. Rev. 439 (2000) (all caps in title removed); Viscusi, Using Warnings to Extend the Boundaries of Consumer Sovereignty, 23 Harv. J.L. & Pub. Pol'y 211 (1999); Geistfeld, Inadequate Product Warnings and Causation, 30 U. Mich. J.L. Reform 309 (1997); Rheingold and Feinglass, Risk-Utility Analysis in the Failure to Warn Context, 30 U. Mich. J.L. Reform 353 (1997); R. Keeton, Warning Defect: Origins, Policies, and Directions, 30 U. Mich. J.L. Reform 367 (1997); Latin, Good Warnings, Bad Products, and Cognitive Limitations, 41 UCLA L. Rev. 1193 (1994); Noah, The Imperative to Warn: Disentangling the "Right to Know" from the "Need to Know" About Consumer Product Hazards, 11 Yale J. on Reg. 293 (1994); Pittenger, Reformulating the Strict Liability Failure to Warn, 49 Wash. & Lee L. Rev. 1509 (1992); Jacobs, Toward a Process Based Approach to Failure-to-Warn Law, 71 N.C. L. Rev. 121 (1992); Henderson and

**History**

A manufacturer's duty to warn of hidden dangers in its products is ancient, with roots reaching back at least to Roman sales law. Under Roman law, a seller aware of hidden defects in its products who failed to disclose them to its buyers was guilty of fraud (*dolus*).[4] Later, Justinian pronounced that "if the seller knew, but was silent and so deceived the buyer, he will have to make good to the buyer all losses that have fallen on him in consequence of the purchase."[5] In the thirteenth century, Thomas Aquinas[6] outlined the responsibilities of merchants, in the *Summa Theologica*,[7] consistent with Justinian principles in the *Digest*. A seller was bound to disclose to the buyer any secret flaws a product might possess: it was a sin and fraud to sell a product containing a latent defect known to the seller but not the buyer, and such a sale was void. If the seller was unaware of the defect, the sale was not a sin, but the seller nevertheless had to return any excess price attributable to the defect.[8] A seller was not bound to disclose obvious defects from "any duty of justice," but to do so would reflect "the more exuberant virtue."[9]

In America, products liability claims based on a seller's failure to provide adequate warnings or instructions arose during the late 1800s, although claims for failure to warn, as products liability claims more generally, were uncommon until the 1900s.[10] The earliest warning claims grew out of and intermingled notions of false representations and deceit,[11] with the courts following the ancient approach of

---

Twerski, Doctrinal Collapse in Products Liability: The Empty Shell of Failure to Warn, 65 N.Y.U. L. Rev. 265 (1990); Madden, The Duty to Warn in Products Liability: Contours and Criticism, 89 W. Va. L. Rev. 221 (1987); Twerski, Weinstein, Donaher, and Piehler, The Use and Abuse of Warnings in Products Liability—Design Defect Litigation Comes of Age, 61 Cornell L. Rev. 495 (1976); W.P. Keeton, Products Liability—Inadequacy of Information, 48 Tex. L. Rev. 398 (1970); Noel, Manufacturer's Negligence of Design or Directions for Use of a Product, 71 Yale L.J. 816 (1962); Dillard and Hart, Product Liability: Directions for Use and the Duty to Warn, 41 Va. L. Rev. 145 (1955); Owen & Davis on Products Liability ch. 9; Frumer, Friedman, and Sklaren, Products Liability ch. 12; Am. Law Prod. Liab. 3d § 28:13; D. Fairgrieve and R. Goldberg, Product Liability ch. 12 (Oxford 3d ed. 2015) (British and European law); S. Pape, Warnings and Product Liability: Lessons Learned from Cognitive Psychology and Ergonomics (Hague 2011) (European law).

4 See J. Thomas, Textbook of Roman Law 286 (1976) ("The concern is with latent or hidden defects. . . . [I]f the vendor was aware of the defect and did not disclose it, he was guilty of *dolus* and would be liable in the *actio empti*. . . ."); Honoré, The History of the Aedilitian Actions from Roman to Roman-Dutch Law, in Studies in the Roman Law of Sale 132, 135 (D. Daube ed., reprint 1977) (1959) ("during the last century of the Republic the notion of *dolus* was extended to cover both the statement by the seller that the thing sold possessed or did not possess some quality when he knew this was untrue and also the case when the seller knowingly concealed a defect"). See also Rogerson, Implied Warranty Against Latent Defects in Roman and English Law, in Studies in the Roman Law of Sale 112, 113 (D. Daube ed., reprint 1977) (1959).

5 Justinian's Digest, Book 19, Tit. 1, Lex 13 (533 A.D.).

6 1225?–1274 A.D.

7 Thomas Aquinas, Summa Theologica, Ethicus, II, II at Q. 77, arts. 2–4 (Fathers of the English Dominican Province trans., 2d rev. ed. 1920), www.newadvent.org/summa/3077.htm.

8 See Hamilton, The Ancient Maxim Caveat Emptor, 40 Yale L.J. 1133 (1931).

9 Id. at 1138 (quoting Aquinas, Summa Theologica, Ethicus, II, II at Q. 77, Art. 4 (Rickaby trans., 2d ed. 1896)).

10 See Bohlen, The Basis of Affirmative Obligations in the Law of Tort, 53 U. Pa. L. Rev. 273 (1905); Dillard and Hart, Product Liability: Directions for Use and the Duty to Warn, 41 Va. L. Rev. 145 (1955) (thorough historical review of duty to warn); Noel, Manufacturer's Negligence of Design or Directions for Use of a Product, 71 Yale L.J. 816 (1962).

11 Notably Langridge v. Levy, 2 M & W 519 (Exch. 1837) (retailer subject to liability in tort for misrepresenting that poorly made gun, an inherently dangerous instrument, was made by a good

considering a merchant's failure to disclose a known defect to be fraudulent.[12] On this basis, early courts held sellers liable for failing to warn that sheep were diseased;[13] that lead paint had been spilled on hay sold for cow feed which killed the cow;[14] and that a painted step-ladder was made of defective wood.[15] A plaintiff seeking recovery on a warning claim against a remote seller could be barred by the absence of privity of contract with the defendant,[16] and sometimes on the basis that the seller was not aware of the danger,[17] or that the plaintiff was.[18] But a number of early decisions permitted claims by remote parties, on principles made famous in *Huset v. J.I. Case Threshing Machine Co.*,[19] where the defendant sold "an article which he knows to be imminently dangerous to life or limb to another without notice of its qualities."[20]

Early cases alleged that a manufacturer or other seller had failed to provide adequate warnings about a variety of dangers—that naphtha sold for lamp oil could explode;[21] that a pull-out bed frame might fall if the legs were not secured;[22] that stove polish might ignite;[23] that coal oil sold for use in starting fires was mixed with gasoline and might explode;[24] that a car crank might kick back and break an arm;[25] that dye in a coat's fur collar might cause allergies;[26] that a can of paint stain might ignite;[27] and that dehydrated milk might go bad.[28] While most of these early warning claims remained partially rooted in deceit, by the middle of the twentieth century warning claims stood solidly on their own.[29]

---

manufacturer and was safe), and Thomas v. Winchester, 6 N.Y. 397 (1852) (medicine seller who falsely labels belladonna as extract of dandelion liable for resulting injuries) (citing Langridge v. Levy).

12 *But see* Bohlen, The Basis of Affirmative Obligations in the Law of Tort, 53 U. Pa. L. Rev. 273 (1905) (mentioning vendor's positive duty to disclose known dangers to a buyer and distinguishing it from vendor's negative duty not to misrepresent).

13 Jeffrey v. Bigelow & Tracy, 13 Wend. 518 (N.Y. Sup. Ct. 1835) (citing Evans' Pothier, pt. 1, ch. 2, art. 3, pl. 166).

14 French v. Vining, 102 Mass. 132 (1869) (if the defendant knew the hay was "dangerous or poisonous, it would plainly be a violation of good faith, and an illegal act, to sell it to the plaintiff without disclosing its condition") (citing Thomas v. Winchester and Langridge v. Levy, note 11).

15 Schubert v. J.R. Clark Co., 51 N.W. 1103 (Minn. 1892) (cites Thomas v. Winchester and holds that the defendant had a duty to warn of the latent defect).

16 See § 1.2, above.

17 See, e.g., Peaslee-Gaulbert Co. v. McMath's Adm'r, 146 S.W. 770 (Ky. 1912) (sellers unaware of risk that painters would put candle close to can of paint, causing can to explode).

18 Leavitt v. Fiberloid Co., 82 N.E. 682 (Mass. 1907) (flammability of "fiberloid" used to make combs).

19 120 F. 865 (8th Cir. 1903) (Minn. law), discussed in § 1.2, above. See, e.g., Wellington v. Downer Kerosene Oil Co., 104 Mass. 64 (1870); Schubert v. J.R. Clark Co., 51 N.W. 1103 (Minn. 1892). See also Heizer v. Kingsland & Douglass Mfg. Co., 19 S.W. 630, 633 (Mo. 1892) (dictum); Olds Motor Works v. Shaffer, 140 S.W. 1047, 1051 (Ky. 1911) (defective rumble seat on which plaintiff was sitting fell off car; dictum).

20 *Huset*, 120 F. at 871.

21 Wellington v. Downer Kerosene Oil Co., 104 Mass. 64 (1870).

22 Lewis v. Terry, 43 P. 398 (Cal. 1896).

23 Clement v. Crosby & Co., 111 N.W. 745 (Mich. 1907).

24 Waters-Pierce Oil Co. v. Deselms, 212 U.S. 159 (1909).

25 Martin v. Maxwell-Brisco Motor Vehicle Co., 138 S.W. 65 (Mo. 1911).

26 Gerkin v. Brown & Sehler Co., 143 N.W. 48 (Mich. 1913).

27 Thornhill v. Carpenter-Morton Co., 108 N.E. 474 (Mass. 1915).

28 Rosenbusch v. Ambrosia Milk Corp., 168 N.Y.S. 505 (App. Div. 1917).

29 See, e.g., Orr v. Shell Oil Co., 177 S.W.2d 608 (Mo. 1943) (worker could maintain claim for failing to warn that contact with chemical could cause damage to kidneys and other injuries) (citing Restatement of

**Nature of Duty to Warn**

The "duty to warn" is an umbrella term for describing a manufacturer's informational obligations to those who purchase and use its products. This duty actually is comprised of two quite separate obligations: the duty to *warn*—to inform buyers and users of hidden dangers in a product; and the duty to *instruct*—to inform buyers on how to avoid a product's dangers in order to use it safely.[30] Together, these duties require that important information on product hazards and product safety are transferred from manufacturers, who possess the information, to buyers and users of products, who need it.[31]

From a manufacturer's perspective, it usually is less costly to warn of a danger than to improve quality assurance or to design the problem entirely out of the product. Courts sometimes assume that supplying warnings and instructions is an easy and inexpensive way for manufacturers to fulfill their obligation to make their products reasonably safe. And injured plaintiffs often reinforce this view, frequently adding warning defect claims indiscriminately to cases where they have no business, since proving that a warning is "defective" often appears to be a far easier (and less expensive) task than successfully attacking a product's design.[32] Yet many courts look skeptically at warning claims and do not lightly impose a duty to warn on manufacturers.[33]

It is true that the direct economic costs of providing warnings and instructions typically are minimal, but less obvious costs raise subtle and important issues. One is the danger of providing too *much* information—the risk of over-warning or "warnings pollution."[34] Moreover, the decision on how much and what types of information a manufacturer should provide with a product can only be answered intelligibly if the goals sought to be achieved by the legal requirements are fully understood. Probably the most generally accepted goal of products liability law is deterrence—risk reduction—predicated on the view that a consumer informed about product dangers and methods of safe use will use that information for self-protection. And deterrence rests on the more complex goal of economic efficiency, which seeks to maximize social resources by minimizing wasteful injuries.[35] There can be no doubt that warnings and

Torts § 388); Dillard and Hart, Product Liability: Directions for Use and the Duty to Warn, 41 Va. L. Rev. 145 (1955) (citing *Orr* as illustration of modern approach to duty to warn).

[30] See, e.g., Ontai v. Straub Clinic & Hosp. Inc., 659 P.2d 734, 743 (Haw. 1983).

[31] Warnings and instructions are distinguished in § 9.3, below.

[32] See, e.g., Richmond, Renewed Look at the Duty to Warn and Affirmative Defenses, 61 Def. Couns. J. 205 (1994) ("failure to warn claims are not technical and are relatively inexpensive to prosecute, unlike traditional design defect cases"). See also Funkhouser v. Ford Motor Co., 736 S.E.2d 309, 314 (Va. 2013) (plaintiff "amended his initial complaint from a design defect claim to a failure to warn claim because he realized that he could not definitively prove the specific defect that caused the fire").

[33] See, e.g., McCracken v. Ford Motor Co., 588 F. Supp. 2d 635, 642–43 (E.D. Pa. 2008) (plaintiff's failure to warn allegations that traveling at high speeds would increase radiation levels in vehicle leading to thyroid cancer were "too conclusory to support his claim"); Killeen v. Harmon Grain Prods., Inc., 413 N.E.2d 767, 770–71 (Mass. App. Ct. 1980) (manufacturer of cinnamon-flavored toothpicks had no duty to warn of danger to child falling during play while holding one in mouth: duty to warn not imposed as "a mindless ritual").

[34] See § 9.3, below.

[35] See § 5.4, above.

instructions often are an efficient way to help protect consumers from latent product hazards.[36]

Another reason for requiring warnings and instructions, grounded in a more fundamental human value, is the promotion of individual autonomy—by shifting cost-benefit decisionmaking on product hazards from manufacturers to individual consumers.[37] A consumer who is fully informed of a product's dangers and how to avoid them may choose to use the product in a particular, safer manner. Or the informed consumer may choose not to buy or use the product at all.[38] Unlike the risk-reduction rationale, which reflects a utilitarian perspective rooted in economic efficiency, this kind of informed consent value focuses on protecting a user's individual rights—specifically, the user's right of self-determination, the right "to determine his own fate."[39] The idea here is "that the user or consumer is entitled to make his own choice as to whether the product's utility or benefits justify exposing himself to the risks of harm. Thus, a true choice situation arises, and a duty to warn attaches, whenever a reasonable man would want to be informed of the risk in order to decide whether to expose himself to it."[40] In short, the purpose of a manufacturer's duty to warn of dangers and how to avoid them is to empower users and consumers to make informed decisions on whether to buy and use particular products (with particular benefits and detriments), and, if so, on how to use them safely.[41]

Lurking within the duty to warn lies a paradox: The duty to warn is at once the most important, yet least effective, duty in the law of products liability. Its importance lies in its respect for the autonomy of consumers, as discussed above, together with its promotion of utility by helping to reduce the level of unnecessary product accidents. Its ineffectiveness springs from how easy it is to assert a warning claim,[42] even if unjustified; how elusive such claims are to adjudicate rationally;[43] and what little impact warnings have on product safety—since mounting studies reveal that they often are ignored.[44] If this latter point is true, if most warnings and instructions truly are

[36] See, e.g., Geistfeld, Inadequate Product Warnings and Causation, 30 U. Mich. J.L. Reform 309, 314 (1997). See also Kurns v. Railroad Friction Prods. Corp., 132 S. Ct. 1261, 1268 (2012) ("Reasonable designs and instructions or warnings both play important roles in the production and distribution of reasonably safe products.") (quoting Restatement (Third) of Torts: Product Liability § 2 cmt. *l*).

[37] See Viscusi, Using Warnings to Extend the Boundaries of Consumer Sovereignty, 23 Harv. J.L. & Pub. Pol'y 211, 231 (1999) (noting that "there is typically substantial heterogeneity in individuals' willingness to bear risk and in the kinds of products they prefer" and that "[h]azard warnings enable consumers to make decentralized choices for the products that best promote their welfare").

[38] See Products Liability Restatement § 2(c) cmt. *i*.

[39] Pavlides v. Galveston Yacht Basin, Inc., 727 F.2d 330, 338 (5th Cir. 1984) (Tex. law).

[40] Borel v. Fibreboard Paper Prods. Corp., 493 F.2d 1076, 1089 (5th Cir. 1973) (Tex. law) (asbestos insulation worker, not warned of risks, contracted asbestosis and mesothelioma).

[41] Lawing v. Trinity Mfg., Inc., 749 S.E.2d 126, 138 (S.C. Ct. App. 2013) (Few, J.) (purpose of warnings is to permit people to "avoid the product altogether or avoid the danger by careful use"); Buckner v. Milwaukee Elec. Tool Corp., 166 Cal. Rptr. 3d 202, 211 (Ct. App. 2013) (purpose of warnings "is to permit the consumer to choose to refrain from using the product altogether or to avoid the danger by careful use").

[42] See, e.g., Richmond, Renewed Look at the Duty to Warn and Affirmative Defenses, 61 Def. Couns. J. 205 (1994); Priest, Products Liability Law and the Accident Rate, in Liability: Perspectives and Policy 217–20 (R. Litan and C. Winston eds., 1988); A. Schwartz, Proposals for Products Liability Reform: A Theoretical Synthesis, 97 Yale L.J. 353, 398 (1988); P. Huber, Liability: The Legal Revolution and Its Consequences 51–58 (1988); R. Epstein, Modern Products Liability Law 93 (1980).

[43] See, e.g., Henderson and Twerski, Doctrinal Collapse in Products Liability: The Empty Shell of Failure to Warn, 65 N.Y.U. L. Rev. 265 (1990).

[44] See, e.g., Sunstein, The Laws of Fear, 115 Harv. L. Rev. 1119, 1123 (2002) (reviewing P. Slovic, The Perception of Risk) ("ordinary people often deal poorly with the topic of risk"); Symposium: Rational Actors or

ignored, then a manufacturer's duty to warn and instruct may be mostly sound and fury, signifying little. So, warnings are powerful because they transfer important safety information and decisionmaking to consumers, yet they frequently make no difference because consumers often fail to process safety information rationally. This is the paradox of the duty to warn.

**Relationship Between Duty to Warn and Duty of Safe Design**

A fundamental aspect of the duty to warn is its relationship to the duty of safe design. The duty to warn is undoubtedly linked to a product's design, in that a warning or instruction provides information about hazards inherent in a product's design and how those design hazards may be avoided. For this reason, some early courts and commentators viewed the duty to warn as a subsidiary obligation of the duty of safe design.[45] Yet, while design defect and warning defect claims often go hand in hand,[46] almost all jurisdictions today view the duty to warn and the duty of safe design largely as distinct, independent obligations.[47] Thus, even if a product's design is as safe as it can be, the manufacturer still has a duty to warn of hidden dangers in the product.[48] And if a substantial danger can be designed out of a product practicably and at little cost, all but a few courts hold that even an "adequate" warning does not insulate a manufacturer who fails to employ the safer design.[49] "A warning is not a Band-Aid to

---

Rational Fools? The Implications of Psychology for Products Liability, 6 Roger Williams U. L. Rev. 1 (2000); Hanson and Kysar, Taking Behavioralism Seriously: The Problem of Market Manipulation, 74 N.Y.U. L. Rev. 630, 724 (1999); Hanson and Kysar, Taking Behavioralism Seriously: Some Evidence of Market Manipulation, 112 Harv. L. Rev. 1420, 1425 (1999); Latin, Good Warnings, Bad Products, and Cognitive Limitations, 41 UCLA L. Rev. 1193 (1994). See also Food & Drug Administration, Experimental Evaluation of the Impact of Distraction on Consumer Understanding of the Risk and Benefit Information in Direct-to-Consumer Prescription Drug Television Advertisements: Executive Summary (June, 2011), http://www.fda.gov/downloads/AboutFDA/CentersOffices/OfficeofMedicalProductsandTobacco/CDER/UCM285377.pdf). This matter is examined in the context of cause in fact. See § 11.4, below.

[45] See Noel, Manufacturer's Negligence of Design or Directions for Use of a Product, 71 Yale L.J. 816 (1962). This thought still lingers in some minds. See, e.g., Gonzalez v. Autoliv ASP, Inc., 64 Cal. Rptr. 3d 908, 918 (Ct. App. 2007) ("The failure to warn may constitute a design defect."); Colegrove v. Cameron Mach. Co., 172 F. Supp. 2d 611, 635 (W.D. Pa. 2001) (trial court did not err in allowing engineer's testimony that absence of guard on foot switch of machine and lack of warning regarding the unguarded foot switch were both design defects).

[46] See, e.g., McConnell v. Cosco, Inc., 238 F. Supp. 2d 970 (S.D. Ohio 2003) (risk that infant, while trying to get out of highchair, could catch neck and be strangled on food tray supported claims for design defect and failure to warn); Watkins v. Ford Motor Co., 190 F.3d 1213 (11th Cir. 1999) (Ga. law) (valid claims that Bronco II, which had propensity to roll over, was designed defectively and that Ford should have warned of this condition).

[47] See § 6.2, above. See also Heckman v. Ryder Truck Rental, Inc., 962 F. Supp. 2d 792, 803 (D. Md. 2013) (unreasonableness of warning is independent basis of liability).

[48] See, e.g., Kurns v. Railroad Friction Prods. Corp., 132 S. Ct. 1261, 1272 (2012) (Kagan, J., concurring) ("a product may be flawlessly designed and still subject its manufacturer or seller to liability for lack of adequate instructions or warnings"); Braaten v. Saberhagen Holdings, 198 P.3d 493, 498 (Wash. 2008) ("A product may be faultlessly manufactured and designed, yet still not be reasonably safe when placed in the hands of the ultimate user without first giving an adequate warning concerning the manner in which to safely use the product."); Karlsson v. Ford Motor Co., 45 Cal. Rptr. 3d 265, 283 (Ct. App. 2006) ("a flawless product that is dangerous is rendered "defective" by a failure to warn of the product's dangerous propensities").

[49] See, e.g., Delaney v. Deere & Co., 999 P.2d 930, 942 (Kan. 2000) ("just because there is a warning on a piece of equipment . . . does not prevent the equipment from being dangerous"); White v. ABCO Eng'g Corp., 221 F.3d 293, 305–06 (2d Cir. 2000) (N.J. law) (notwithstanding clearly adequate warning, conveyor manufacturer was subject to liability for failing to provide side guarding).

cover a gaping wound, and a product is not safe simply because it carries a warning."[50] This important issue was more fully developed above.[51]

### Variety of Warning Issues

This chapter considers the fundamental issues surrounding the duty to warn: what theories of recovery support the duty to warn, what types of information that duty requires manufacturers to convey, how that information must be communicated, and to whom it must be given. The chapter first addresses the theories and tests of liability in warning cases,[52] and the central issue of whether a manufacturer's warnings and instructions for a particular product are "adequate" given its likely environments of use.[53] The final inquiry in this chapter focuses on who, other than the purchaser, the manufacturer must warn,[54] an inquiry that includes consideration of the bulk supplier and sophisticated user doctrines.[55]

Many other important warning issues lie scattered throughout this book, as they are scattered widely throughout products liability law. Addressed in other contexts are the role of expert testimony in proving that a warning was defective and that the defect caused the plaintiff's harm;[56] the absence, in most jurisdictions, of a duty to warn of obvious and widely known dangers;[57] the fading idea of a duty to warn of unknowable dangers;[58] the spreading acceptance of a manufacturer's post-sale duty to warn;[59] the duty, accepted in virtually every jurisdiction, to warn against foreseeable product misuse;[60] the circumstances in which a manufacturer's common-law duty to warn may be preempted by a federal safety statute or regulation;[61] the duties to warn of non- manufacturing suppliers, such as retailers,[62] successor corporations,[63] and sellers of used products;[64] the duties of drug manufacturers and pharmacists to warn of dangers in prescription drugs and medical devices;[65] and circumstances in which a manufacturer's failure to warn of danger may result in punitive damages.[66]

---

[50] Glittenberg v. Doughboy Recreational Indus., 491 N.W.2d 208, 216 (Mich. 1992). See Products Liability Restatement § 2 cmt. *l*.

[51] See § 6.2, above. See also § 10.2, below.

[52] See § 9.2, below.

[53] See § 9.3, below.

[54] See § 9.4, below.

[55] See § 9.5, below.

[56] See § 6.3, above.

[57] See § 10.2, below.

[58] See § 10.4, below.

[59] See § 10.8, below.

[60] See § 13.5, below.

[61] See § 14.5, below.

[62] See § 15.2, below.

[63] See § 15.5, below.

[64] See § 16.5, below.

[65] See §§ 18.3 and 18.4, below.

[66] See Owen & Davis on Products Liability § 26:17 (punitive damages for failing to warn of known dangers), and § 26:18 (for failing to warn or recall after sale) (4th ed. 2014).